IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                    WESTERN DIVISION
_____

GWENDOLYN H. KING


     Plaintiff,

vs.                                        No. 17-2402-SHL-dkv

THE ASSET-BANK OF NEW YORK MELLON
for the Certificateholders of CWABS, INC.,
Asset Backed Certificates, Series 20015,
f/k/a The Bank of New York,
AGENTS BANK OF AMERICA, NA, and
SELECT PORTFOLIO SERVICING, Inc.


     Defendants.
_____

          REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL
_____

     On June 9, 2017, the plaintiff, Gwendolyn H. King ("King"), filed a *pro se* complaint against the defendants, The Asset-Bank of New York Mellon f/k/a The Bank of New York as Trustee for the Certificateholder of the CWABS, Inc., Asset-Backed Certificates, Series 20015 ("Bank of New York Mellon"), Agents Bank of America, N.A. ("Bank of America"), and Select Portfolio Servicing, Inc. ("SPS") (collectively "the Defendants"), seeking, *inter alia*, 2 million dollars in damages and to set aside the foreclosure sale of the property located at 1905 Kilarney Avenue, Memphis, Tennessee 38116 ("the Property"). (Compl., ECF No. 1.) This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and

recommendation as appropriate. (Admin. Order, 2013-05, Apr. 29, 2103.)

Accompanying the complaint was a motion seeking leave to proceed *in forma pauperis*. (ECF No. 2.) The information set forth in the affidavit submitted by King satisfies her burden of demonstrating that she is unable to pay the civil filing fee. *See* 28 U.S.C. §§ 1915(a), 1746. Accordingly, the motion to proceed in forma pauperis is GRANTED.

For the reasons that follow, it is recommended that this case be dismissed *sua sponte* for failure to state a claim.

I. PROPOSED FINDINGS OF FACT

In this 52-page complaint, King seeks to set aside the foreclosure sale of the Property scheduled for July 6, 2017. (Compl. ¶ 43, ECF No. 1.) Under the "Jurisdiction" section, King argues that the court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1691. (*Id.* ¶ 12.)

King alleges that the borrower of the loan was her ex-husband Harold King but that both she and her ex-husband are listed on the Deed of Trust. (*Id.* ¶¶ 21, 25.) The loan was refinanced in November 10, 2004, after which it was transferred multiple times. (*Id.* ¶ 19.) The current lender of the loan is the Bank of New York Mellon. (*Id.*) The servicing of the loan was transferred to Bank of America in July 2008 and then to SPS

on July 16, 2015. (*Id.* ¶¶ 8, 19.) SPS is a mortgage servicer for the Bank of New York Mellon. (*Id.* ¶ 6.)

King alleges that in April 2006, Harold King abandoned the home and that since then she has made all the payments on property. (*Id.* ¶¶ 21, 22.) Soon after her ex-husband left, King had a hard time financially and fell behind on loan payments. (*Id.* ¶ 23.) At some point, King defaulted on the loan which on October 2, 2008 was accelerated. (*Id.* ¶ 51.) Following a divorce on August 12, 2012, King's ex-husband Harold King executed a Quit Claim Deed to the Property to King. (*Id.* ¶ 21.)

King alleges that she has attempted to assume the loan in her name and has also tried to get "temporary financial protection and financial relief with special programs such as [the] Temporary Trial Period (TTP) under the Homes Made Affordable Program (HAMP) Loan Modification[1] and [the] Servicemembers Civil Relief Act (SCRA)[2]." (*Id.* ¶¶ 26, 27.) Such attempts, however, have been unsuccessful. In the remainder of

---

[1]The Home Affordable Modification Program ("HAMP") was "created pursuant to the Emergency Economic Stabilization Act, 12 U.S.C. § 5201, which creates incentives for lenders to offer borrowers more favorable loan modifications." *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 298 (6th Cir. 2015). Homeowners do not have a private right of action to enforce the terms of HAMP. *Id.*

[2]The Service Members Civil Relief Act ("SCRA") grants certain rights and protections to members of the National Guard Reserves. *See* 50 U.S.C. § 3911 *et seq.*

3

her complaint, King alleges that she has submitted payments to Bank of America but that Bank of America has miscalculated the principal amount, the interest charged, and the escrow account, and has charged fraudulent late fees and other fees, tactics which have led to the foreclosure of the Property. (*Id.* ¶¶ 53-123.) Apart from the voluminosity of the allegations, it is also difficult to follow King's calculations because throughout the complaint she references documents that she has not attached as exhibits to the complaint.

King sets forth the following claims: (1) intentional infliction of emotional distress; (2) violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*; (3) negligent misrepresentation; (4) violation of Tennessee Code § 28-3-105;[3] and (5) intentional misrepresentation of SCRA benefits. (*Id.* ¶¶ 124-29.)

This is the second of two lawsuits filed by King in relation to the foreclosure sale of the same property that is the subject of the present action. On June 15, 2015, King and her ex-husband Harold King filed a complaint in the Shelby County Chancery Court against the Bank of New York Mellon and the Bank of America, which was removed by the defendants to the United District Court for the Western District of Tennessee,

---

[3]Tennessee Code § 28-3-105 contains the statute of limitations for personal injury and property actions. It cannot serve as basis for any claims.

docketed as Case No. 2:15-cv-02432-SHM-dkv. *See* Notice of Removal, King v. Bank of New York Mellon, *et al.*, No. 2:15-cv-02432-SHM-dkv (W.D. Tenn. June 25, 2015), ECF No. 1. In the first lawsuit, Gwendolyn King and Harold King claimed that the Bank of New York Mellon and the Bank of America: (1) violated HAMP; (2) violated the SCRA; (3) violated the Tennessee Consumer Protection Act; (4) committed negligence; (5) violated Tennessee law by not entering into mandatory mediation with borrower; and (6) fraudulently corroborated with Memphis Area Legal Services to stall King in her efforts to save her home. Complaint 9-13, King v. Bank of New York Mellon, *et al.*, No. 2:15-cv-02432-SHM-dkv (W.D. Tenn. July 21, 2015), ECF No. 13-1.

The defendants in King's first lawsuit filed a motion to dismiss the complaint for failure to state a claim. This court recommended that the motion to dismiss be granted in full which the presiding district judge adopted. *See* Order Adopting Report and Recommendations, King v. Bank of New York Mellon, *et al.*, No. 2:15-cv-02432-SHM-dkv (W.D. Tenn. Nov. 25, 2015), ECF No. 34. King filed a motion for leave to file a second amended 77-page complaint in which she included 13 claims. *See* Proposed Second Amended Complaint ¶¶ 142-270, King v. Bank of New York Mellon, *et al.*, No. 2:15-cv-02432-SHM-dkv (W.D. Tenn. Sept. 8, 2015), ECF No. 25-1. On November 30, 2015, the court denied King's motion for leave to file a second amended complaint

because the proposed second amended complaint did not state a claim for which relief could be granted. Order, King v. Bank of New York Mellon, *et al.*, No. 2:15-cv-02432-SHM-dkv (W.D. Tenn. Nov. 30, 2015), ECF No. 35. Judgment was entered in favor of all defendants on February 12, 2016. Judgment, King v. Bank of New York Mellon, *et al.*, No. 2:15-cv-02432-SHM-dkv (W.D. Tenn. Feb. 12, 2016), ECF No. 44.

## II. PROPOSED CONCLUSIONS OF LAW

### A. 28 U.S.C. § 1915(e)(2) Screening

Pursuant to Local Rule 4.1(a), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2). The clerk is authorized to issue summonses to *pro se* litigants only after that review is complete and an order of the court issues. This report and recommendation will constitute the court's screening of King's complaint in its entirety.

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action —

   (i)     is frivolous or malicious;

   (ii)    fails to state a claim on which relief may be granted; or

   (iii)   seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

B. <u>Standard of Review for Failure to State a Claim</u>

In assessing whether King's complaint in this case states a claim upon which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). To survive Rule 12(b)(6) dismissal following *Iqbal* and *Twombly*, a complaint must "'contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 678). The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to

see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.")(internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("[D]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are

properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

C. Res Judicata

The weight of authority supports dismissal for failure to state a claim when a case is barred by the doctrine of res judicata. *See, e.g.*, *Rushford v. Firstar Bank, N.A.*, 50 F. App'x 202, 203 (6th Cir. 2002)(affirming "the district court's dismissal pursuant to Fed. R. Civ. P. 12(b)(6) based on the doctrine of *res judicata*"); *Thompson v. U.S. Small Bus. Admin.*, 8 F. App'x 547, 548 (6th Cir. 2001)(affirming failure-to-state-a-claim dismissal that was based on res judicata); *City of Canton v. Maynard*, 766 F.2d 236, 239 (6th Cir. 1985)(per curiam)(affirming district court's Rule 12(b)(6) dismissal on res judicata grounds); *Link v. Sumner Cnty. Jail*, No. 3:10-CV-0236, 2010 WL 1138029, at *2 (M.D. Tenn. Mar. 19, 2010)("Because the plaintiff's claims are barred by the doctrine of *res judicata*, the Court finds that the plaintiff's complaint fails to state a claim upon which relief can be granted.").

Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980)(citation omitted); *see also Kane v. Magna Mixer Co.*, 71 F.3d 555, 560

(6th Cir. 1995). To apply the doctrine of res judicata, four elements must be satisfied: (1) the first action must result in a final judgment on the merits by a court of competent jurisdiction; (2) the second action must involve the same parties, or their privies, as the first; (3) the second action raises an issue actually litigated or which should have been litigated in the first action; and (4) an identity of the causes of action between the first and the second actions. *Kane*, 71 F.3d at 560; *see also Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009).

King's allegations in the instant complaint are identical to the allegations in the first lawsuit, and thus, her complaint should be dismissed under the doctrine of res judicata. The first prong is satisfied. The federal district court for the Western District of Tennessee is a court of competent jurisdiction. King's first lawsuit was dismissed as to all the defendants and a final judgment was entered on February 12, 2016. Judgment, King v. Bank of New York Mellon, *et al.*, No. 2:15-cv-02432-SHM-dkv (W.D. Tenn. Feb. 12, 2016), ECF No. 44. King did not timely appeal that judgment.[4]

---

[4]In a civil case, a notice of appeal must be filed with the district clerk within 30 days after entry of the judgment appealed from. Fed. R. App. P. 4(a)(1)(A). King filed a notice of appeal on June 14, 2017, more than one year later. *See* Notice of Appeal, King v. Bank of New York Mellon, *et al.*, No. 2:15-cv-02432-SHM-dkv (W.D. Tenn. June 14, 2016), ECF No. 45.

As to the second prong, the Bank of New York Mellon and Bank of America were both parties in the first lawsuit. Although SPS was not a party in the first lawsuit, privity exists between SPS and the Bank of New York Mellon. Privity "means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented." *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 481 (6th Cir. 1992)(citation omitted). "[A] perfect identity of the parties is not required, only a substantial identity of interests that are adequately presented and protected by the first litigant." *Vanmeerbeeck v. M & T Bank*, No. 2:12-CV-11980, 2012 WL 2943400, at *4 (E.D. Mich. July 18, 2012)(citation and internal quotation marks omitted); *see also Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106, 1109 (6th Cir. 1981)(stating that privity is "a shorthand designation for those persons who have a sufficiently close relationship with the record parties to be bound by the judgment")(internal quotation marks omitted)). "Myriad district courts agree that a mortgage's loan servicer acts as agent for the mortgagee, thereby satisfying res judicata's privity requirement for suits involving the mortgage." *Kimball v. Orlans Assocs. P.C.*, 651 F. App'x 477, 481 (6th Cir. 2016)(citations omitted).

---

King's appeal is untimely, and therefore, the district court's judgment constitutes a final judgment on the merits.

Although SPS was not a named defendant in King's first lawsuit, SPS is a mortgage servicer for the Bank of New York Mellon, (*see* Compl. ¶ 6, ECF No. 1), and the Bank of New York Mellon was a named defendant in the first action. As a servicer of the mortgage held by the Bank of New York Mellon, SPS's interest in the mortgage is "sufficiently aligned with [the Bank of New York Mellon's] interest to satisfy the privity requirement." *Laues v. Roberts*, No. 2:14-CV-12313, 2015 WL 1412631, at *6 (E.D. Mich. Mar. 25, 2015)(citations omitted).

To satisfy the third and fourth element, "there must be an identity of the causes of action[,] that is, an identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Wilson v. Strickland*, 333 F. App'x 28, 30 (6th Cir. 2009)(internal quotation marks omitted)(citing *Holder v. City of Cleveland*, 287 F. App'x 468, 470–71 (6th Cir. 2008). Moreover, "[w]here the two causes of action arise from the 'same transaction, or series of transactions,' the plaintiff should have litigated both causes in the first action and may not litigate the second issue later." *Holder*, 287 F. App'x at 471 (quoting *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006)). "[T]he term 'same cause of action' can encompass claims . . . that were previously available to the parties, regardless of whether they were asserted or determined in the first proceeding." *Thomas v. Miller*, 329 F. App'x 623,

627 (6th Cir. 2009)(citing *Brown v. Felsen,* 442 U.S. 127, 131 (1979)(internal quotation marks omitted).

Both of King's lawsuits arise out the foreclosure sale of the same property. Apart from King's fifth claim of intentional misrepresentation of SCRA benefits alleged in the instant case, discussed *infra*, all of the other claims relate to the same set of facts asserted in King's first lawsuit. King's negligent-misrepresentation claim was also asserted by King in the first lawsuit and dismissed by the court. *See* Order, King v. Bank of New York Mellon, *et al.*, No. 2:15-cv-02432-SHM-dkv (W.D. Tenn. Nov. 25, 2015), ECF No. 34. Although King did not assert an intentional-infliction-of-emotional-distress claim or an ECOA claim in the first lawsuit, these claims arise from the same series of transactions, and thus, were previously available to King. She should have litigated these causes of action in her first lawsuit and may not litigate them here. *Holder*, 287 F. App'x at 471.

King's fifth cause of action, intentional misrepresentation of SCRA benefits, is based on King's allegations that the Bank of New York Mellon and the Bank of America intentionally misrepresented the status of Harold King's SCRA eligibility status in their motion to dismiss the first lawsuit. (Compl. ¶ 129, ECF No. 1.) One of the protections granted by the SCRA is a general prohibition on foreclosure on a deed of trust during

13

the period of the servicemember's military service. 50 U.S.C. § 3953(c)(1). This protection, however, applies only to an obligation on real property that "originated before the period of the servicemember's military service." *Id.* § 3953(a)(1); *see also Coward v. JP Morgan Chase*, 2012 WL 2263359, at *5 (E.D. Cal. June 15, 2012) ("Plaintiff also alleges that she entered into the loan during the period of her husband's military service . . . . However, the SCRA only applies to contracts entered into before military service.").

In their motion to dismiss King's first lawsuit, defendants Bank of New York Mellon and Bank of America maintained that Harold King was not entitled to SCRA protections because Harold King's service as a Tennessee Army National Guard Reservist began long before he executed the Note and the Deed of Trust in 2004. *See* Mot. to Dismiss 4-5, King v. Bank of New York Mellon, *et al.*, No. 2:15-cv-02432-SHM-dkv (W.D. Tenn. July 21, 2015), ECF No. 18. There is no misrepresentation in the Bank of New York Mellon and the Bank of America's position. King herself acknowledges in her instant lawsuit that the loan originated through refinancing on November 10, 2004, and that Harold King served in the Tennessee Army National Guard Reserve from 1982 until May 2016. (Compl. ¶¶ 19, 67, ECF No. 1.) Because the loan did not originate before the period of Harold King's military service, the SCRA does not apply. Therefore, King's

intentional-misrepresentation-of-SCRA-benefits claim based on representations made by the Bank of New York Mellon and the Bank of America in their motion to dismiss King's first complaint fails to state a claim upon which relief can be granted.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that King's complaint be dismissed as barred by the doctrine of res judicata and for failure to state a claim upon which relief can be granted.

Respectfully submitted this 22nd day of June, 2017.

s/ Diane K. Vescovo_____  
DIANE K. VESCOVO  
UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.